UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTIGONI STAVRAKIS,

    Plaintiff,

v.                                                 Case No: 8:16-cv-2343-T-17JSS

UNDERWRITERS AT LLOYD'S
LONDON,

    Defendant.
_____

## ORDER

This cause comes before the Court pursuant to the cross motions for summary judgment (Doc. Nos. 41 & 44) (the "**Summary Judgment Motions**") and the responses in opposition (Doc. Nos. 49 & 50) filed by the Plaintiff, Antigoni Stavrakis (the "**Plaintiff**" or "**Mrs. Stavrakis**"), and the Defendant, Underwriters at Lloyd's London a/k/a Certain Underwriters at Lloyd's, London (the "**Defendant**"). For the reasons set forth below, the Summary Judgment Motions are **DENIED**.

I.    **Background**

The facts of this case are both straightforward and tragic. On August 13, 2012, Phillip Stavrakis shot his brother, John Stavrakis, a total of six times, causing serious injuries. (A. Stavrakis Dep. 19:14-18; 27:23-25—28:1-5). The shooting occurred at a duplex owned by John and Phillip Stavrakis' parents, the Plaintiff and her late husband, Steve P. Stavrakis. (A. Stavrakis Dep. 8:18-25—9:1-6; 37:4-9). The shooter, Phillip Stavrakis, lived in unit 406 of the duplex, while his parents lived adjacent to him in unit 410. (Doc. No. 1-1, at 8).

Even more tragically, the shooting occurred one day after the elder Mr. Stavrakis passed away, while family and loved ones gathered at the duplex to plan his funeral. (A. Stavrakis Dep. 23:20-25—24:1-18). During the gathering, John Stavrakis noticed that his brother, Phillip, was not present, so he went next door to see how his brother was doing. (J. Stavrakis Dep. 40:3-5). When John entered Phillip's unit, he saw that Phillip had a pistol in his hand. (J. Stavrakis Dep. 40-17-18). John attempted to console Phillip by giving him a hug, but Phillip raised the gun and shot him six times. (J. Stavrakis Dep. 40:19-25—41:1-6). After being shot, John broke through the back door of Phillip's unit and ran next door. (J. Stavrakis Dep. 43:3-8). An ambulance was called, and John was ultimately airlifted to Bayfront Medical Center where he remained for 36 days. (J. Stavrakis Dep. 43:9-21).

After John was released from the hospital, he and his wife filed suit against his mother alleging that she was negligent, for among other things, allowing Phillip to store firearms at the duplex and for failing to warn John of the danger posed by Phillip. (Doc. No. 45-1, at 2-8). On January 21, 2013, the Plaintiff notified the Defendant of the lawsuit, and requested that it defend and indemnify her pursuant to her Homeowners 3-Special Form Policy with the Defendant effective August 6, 2012 through August 6, 2013 (the "**Policy**"). The Defendant responded by refusing to defend or indemnify the Plaintiff, arguing that her losses did not constitute an "occurrence" as defined in the Policy or, alternatively, that any losses were excluded because Phillip was an "insured" under Section II. E. of the Policy. (Doc. No. 1-1, at 7-11). The Plaintiff subsequently filed this suit, seeking a declaration that she is entitled to a defense and indemnification under the

Policy. (Doc. No. 1). The Defendant removed the case to this Court on August 16, 2016. (Doc. No. 1).

On June 5, 2017, the parties filed the Summary Judgment Motions, arguing that they are each entitled to judgment as a matter of law. For her part, the Plaintiff argues that Phillip Stavrakis was not a member of her household at the time of the shooting and, as a result, is not an "insured" under Section II. E. of the Policy. (Doc. No. 41). The Defendant, on the other hand, argues that Phillip Stavrakis was a member of his parents' household at the time of the shooting, making the exclusions found in Section II. E. applicable. (Doc. No. 44). Alternatively, the Defendant argues that the Policy does not provide for coverage in the first instance because the Plaintiff's losses were caused by an intentional act and, as a result, do not constitute an "occurrence" under the Policy. The Summary Judgment Motions are now ripe for consideration.

## II.   Standard of Review

"Federal Rule of Civil Procedure 56 requires that summary judgment be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *U.S. Commodity Futures Trading Com'n v. Am. Derivatives Corp.*, 2008 WL 2571691, at *2 (N.D. Ga. June 23, 2008) (internal quotations omitted). "The moving party bears the initial responsibility of informing the court of the bases for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (internal quotations omitted). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does exist." *Id.* "A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law." *Id.* "An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

## III. Discussion

"Pursuant to Florida law, interpretation of an insurance policy is a question of law to be decided by the court." *Divine Motel Grp., LLC v. Rockhill Ins. Co.*, 2015 WL 4095449, at *6 (M.D. Fla. July 7, 2015) (internal quotations omitted). In determining whether a policy provides for coverage, "the insured bears the [initial] burden of proving that a claim is covered." *Id.* Where the insured satisfies this initial burden, but the insurer argues that an exclusion otherwise bars coverage, "the burden of proving an exclusion to coverage is on the insurer." *Id.*

Here, Section II. A. of the Policy, titled "Coverage E – Personal Liability," provides coverage for bodily injury or property damage caused by an "occurrence." (Doc. No. 45-3, at 48). The Policy defines "[o]ccurrence" as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'" (Doc. No. 45-3, at 34) (emphasis added). Section II. E. of the Policy goes on to exclude from coverage any bodily injury or property damage "expected or intended by *an* insured." (Doc. No. 45-3, at 49) (emphasis added). The parties dispute whether there has been an "occurrence" or "accident" sufficient to trigger coverage under the Policy and, if so, whether any such losses are excluded under Section II. E. Thus, the Court's analysis must initially focus on whether there has been an "occurrence," and second, on whether the expected or intended injury exclusion applies.

4

### A. Viewed from the perspective of the insured, there has been an "occurrence" under the Policy.

"[T]he law is well-settled" that where the insured commits an intentional tort, there can be no coverage for an "accident" under the policy. *Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649, 651 (Fla. 3d DCA 1977) (internal quotations omitted). However, when construing the policy, the Court must view "the term 'accident' from the standpoint of whether the *insured* expected or intended the damages." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1075 (Fla. 1998) (emphasis added). Here, the Plaintiff seeks a declaration that she is entitled to a defense and indemnification in an action brought against her for negligence. While the underlying lawsuit is largely a result of Phillip Stavrakis' intentional misconduct, John Stavrakis is not suing his mother for an intentional tort. To the contrary, John Stavrakis is accusing his mother of being negligent. Viewed in the light most favorable to the Plaintiff, John Stavrakis' allegations that his mother acted negligently give rise to a reasonable inference that there has been an "occurrence" under the Policy. As a result, the Defendant is not entitled to summary judgment.

### B. Genuine issues of material fact preclude summary judgment on whether Phillip Stavrakis was a member of the Plaintiff's household at the time of the shooting.

The expected or intended injury exclusion found in Section II. E. of the Policy is similar to the policy language considered by the United States District Court for the Southern District of Florida in *Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1447 (S.D. Fla. 1989). In *McCranie*, the court was asked to examine an exclusion for "bodily injury or property damage [resulting] from the intentional or criminal acts of *an* insured." *Id.* (emphasis added). The issue in *McCranie* was whether the exclusion applied to alleged

acts of negligence by an insured, where the injuries at issue were also caused by the intentional and criminal acts of a co-insured. *Id.* The court determined that because the policy referred to the intentional or criminal acts of "*an* insured," as opposed to "*the* insured," the policy was intended to exclude "coverage for injuries intentionally caused by an insured, whether or not that insured person is the party being sued or the intentional actor." *Id.* at 1447-48 (emphasis added). The Eleventh Circuit appears to agree with the *McCranie* court's interpretation of provisions at issue, noting that "[a] policy jointly covers all insured parties if fraud or dishonesty on behalf of *any* insured precludes coverage." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc.*, 117 F.3d 1328, 1336 (11th Cir. 1997) (emphasis in original).

Based on the foregoing, to the extent that Phillip Stavrakis is an "insured" under the Policy, the exclusion for injuries "expected or intended by *an* insured" applies to any injuries intentionally caused by Phillip Stavrakis, regardless of whether Phillip Stavrakis or the Plaintiff is the party being sued. Stated differently, if Phillip Stavrakis is an "insured," John Stavrakis' injuries are not covered under the Policy. Here, the Policy defines the term "[i]nsured," in pertinent part, as the named insureds and residents of the named insureds' "household." (Doc. No. 45-3, at 33). The term "household" is not defined in the Policy, but courts have interpreted the term to include persons who share "(1) close ties of kinship, (2) a fixed dwelling unit, and (3) enjoyment of all the living facilities." *Row v. United Services Auto. Ass'n*, 474 So.2d 348, 349 (Fla. 1st DCA 1985). More broadly, "the main thread of a family household is the sharing of companionship and living facilities in a dwelling unit by members of a household." *Id.*

6

Here, genuine issues of material fact preclude summary judgment regarding whether Phillip Stavrakis was a member of his mother's household at the time of the shooting and, as a result, whether John Stavrakis' losses are covered under the Policy. On the one hand, the Defendant notes that Phillip Stavrakis lived at the insured premises, shared meals with his parents (who were the named insureds), had access to his parents' unit at the duplex, used the same washer and dryer as his parents, did not pay rent, and had access to his parents' automobile. *See* (Doc. No. 44, at 8-9). The Plaintiff, on the other hand, responds that the two units at the duplex have separate kitchens, living areas, and bathrooms; that Phillip Stavrakis and the Plaintiff had separate utility and cable television bills; and that the Plaintiff did not visit her son while he lived in the adjacent unit. (Doc. No. 49, at 2-3).

The record further demonstrates that Phillip Stavrakis generally paid his own utility bills, (A. Stavrakis Dep. 14:18-24), maintained a job until shortly prior to the shooting incident, (A. Stavrakis Dep. 17:13-17), and did not assist his parents with household chores. (A. Stavrakis Dep. 15:7-9). The record further demonstrates that while Phillip Stavrakis used his parents' laundry facilities, those facilities were located on the outside of the property, in the form of a common laundry room, and were not located inside his parents' unit. (A. Stavrakis Dep. 54:2-11). Viewing the foregoing facts in the light most favorable to the non-moving party, both parties are entitled to reasonable inferences that Phillip Stavrakis was, or was not, a member of his parents' household at the time of the shooting. Thus, summary judgment is inappropriate.

IV.  **Conclusion**

Accordingly, it is

**ORDERED** that the Summary Judgment Motions are **DENIED**.

Order in Case No: 8:16-cv-2343-T-17JSS

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 27th day of September, 2017.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record